EILEEN M. DECKER
United States Attorney
DOROTHY A. SCHOUTEN
Assistant United States Attorney
Chief, Civil Division
JUSTIN A. OKUN (Cal. Bar No. 230954)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-7354
    Facsimile: (213) 894-7819
    E-mail: Justin.Okun@usdoj.gov

Attorneys for Defendant
Federal Communications Commission

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION OF AFRICAN AMERICAN-OWNED MEDIA, a California limited liability company; and ENTERTAINMENT STUDIOS NETWORKS, INC. a California corporation,<br><br>    Plaintiffs,<br><br>    v.<br><br>CHARTER COMMUNICATIONS, INC., a Delaware corporation; FEDERAL COMMUNICATIONS COMMISSION, a federal agency; and DOES 1 through 10, inclusive,<br><br>    Defendants. | No. CV 16-00609 GW (FFMx)<br><br>**DEFENDANT FEDERAL COMMUNICATION COMMISSION'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br><u>Hearing on Motion</u><br><br>Date: July 14, 2016<br>Time: 8:30 a.m.<br>Place: Courtroom 10 – Spring Street<br><br>Honorable George H. Wu<br>United States District Judge |

CONCURRENTLY FILED HEREWITH:

    1. Declaration of C. Grey Pash, Jr.; and

    2. Proposed Order

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on July 14, 2016 at 8:30 a.m., or as soon thereafter as may be heard, defendant Federal Communications Commission will, and hereby does, move to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of C. Grey Pash, Jr., and such other evidence as the Court may consider.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which was held on June 9, 2016.

Dated: June 16, 2016                    Respectfully submitted,

                                        EILEEN M. DECKER
                                        United States Attorney
                                        DOROTHY A. SCHOUTEN
                                        Assistant United States Attorney
                                        Chief, Civil Division

                                        /s/ *Justin A. Okun*
                                        JUSTIN A. OKUN
                                        Assistant United States Attorney

                                        Attorneys for Defendant
                                        Federal Communications Commission

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................1

II.   FACTUAL AND REGULATORY BACKGROUND...................................2

III.  LEGAL STANDARD ..........................................................................5

IV.  ARGUMENT......................................................................................6

    A.   The Courts of Appeals have exclusive jurisdiction to review FCC orders. ............................................................................................6

    B.   Plaintiffs' claims of futility cannot vest jurisdiction in this Court......11

    C.   The Federal Communications Commission is not subject to 42 U.S.C. § 1981 ................................................................................ …....13

V.   CONCLUSION...................................................................................14

# TABLE OF AUTHORITIES

**Federal Cases**

Affiliated Prof'l Home Health Care Agency v. Shalala, 164 F.3d 282 (5th Cir.1999) ................................................................................................14

American Bird Conservancy v. FCC, 545 F.3d 1190 (9th Cir. 2008)................9, 10

CE Design, Ltd. v. Prism Business Media, Inc., 606 F.3d 443 (7th Cir. 2010) ........9

City of Peoria v. General Elec. Cablevision Corp., 690 F.2d 116 (7th Cir. 1982)....7

City of Rochester v. Bond, 603 F.2d 927 (D.C. Cir. 1979).......................................7

Davis v. United States Dep't of Justice, 204 F.3d 723 (7th Cir.2000) ....................14

FCC v. ITT World Communications, Inc., 466 U.S. 463 (1984) .........................7, 8

Folden v. United States, 379 F.3d 1344 (Fed. Cir. 2004).........................................9

In re Dynamic Random Access Memory (DRAM) Antitrust Litig., 546 F.3d 981 (9th Cir. 2008) .................................................................................................6

McCarthy v. United States, 850 F.2d 558 (9th Cir. 1988).........................................6

Morse v. North Coast Opportunities, Inc., 118 F.3d 1338 (9th Cir.1997) ..............14

Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41 (1938) ................................10

North American Catholic Educ. Prog. Found. v. FCC, 437 F.3d 1206 (D.C. Cir. 2006) ...............................................................................................................7

Port of Boston Marine Term. Assn v. Rederiaktiebolaget Transatlantic, 400 U.S. 62 (1970).........................................................................................................7

Public Util. Comm'r of Oregon v. Bonneville Power Admin., 767 F.2d 622 (9th Cir. 1985) ........................................................................................................7

St. Clair v. City of Chico, 880 F.2d 199 (9th Cir. 1989) ..........................................6

Telecommunications Research & Action Center v. FCC, 750 F.2d 70 (D.C. Cir. 1984) ................................................................................................... 7, 12, 13

Terrell v. Brewer, 935 F.2d 1015 (9th Cir. 1991)...................................................11

Tosco Corp. v. Communities for Better Environment, 236 F.3d 495 (9th Cir.2001) ...................................................................................................................................5

United States v. Any and all Radio Station Transmission Equip., 207 F.3d 458 (8th Cir.2000) ........................................................................................................9, 10

Whitehorn v. FCC, 235 F.Supp.2d 1092 (D. Nev. 2002) .........................................6

Whitney Nat'l Bank v. Bank of New Orleans, 379 U.S. 411 (1965) ............. 7, 9, 10

Wilson v. A.H. Belo Corp., 87 F.3d 393 (9th Cir.1996) ........................... 7, 8, 9, 10

Z.F. v. Ripon Unified Sch. Dist., 365 Fed. Appx. 77 (9th Cir. 2010)……………11

**Federal Statutes**

5 U.S.C. § 703 ...........................................................................................................7

5 U.S.C. § 704 ...........................................................................................................7

28 U.S.C. § 1331 ......................................................................................................7

28 U.S.C. § 2342 ......................................................................................... 6, 12, 13

28 U.S.C. § 2343 .....................................................................................................12

42 U.S.C. § 1981 .....................................................................................................13

47 U.S.C. §§ 151 ......................................................................................................2

47 U.S.C. § 214 .........................................................................................................2

47 U.S.C. §§ 301 ......................................................................................................2

47 U.S.C. §§ 402 ....................................................................................... 6, 8, 9, 12, 13

**Federal Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................5

**Federal Regulations**

47 CFR § 1.45(c)……………………………………………………………….…..5

**Other Authorities**

Note, Jurisdiction to Review Federal Administrative Action: District Court or Court of Appeals, 88 Harv. L. Rev. 980, 983 (1975) ..........................................10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On January 27, 2016, plaintiffs National Association of African American-Owned Media ("NAAAOM") and Entertainment Studios Networks, Inc. ("ESI") filed a complaint against Charter Communications, Inc. ("Charter") and the Federal Communications Commission ("FCC" or "Commission") (hereinafter "complaint"). Plaintiffs' first cause of action seeks damages and injunctive relief against Charter, claiming statutory civil rights violations. Plaintiffs' second cause of action seeks injunctive relief against the FCC claiming constitutional violations. Specifically, Plaintiff ESI contends that it "is a victim of Charter's racial discrimination in contracting and the FCC's practice of providing its governmental stamp-of-approval on racial discrimination in the media industry, in violation of law." Doc. 1, Compl. ¶26. Plaintiffs contend that the FCC violated their due process rights under the Fifth Amendment "by engaging in a pattern or practice of facilitating economic exclusion of African Americans by encouraging merger applicants to execute sham diversity [memorandums of understanding] in order to secure merger approval." Id. ¶104.

As plaintiffs recognize (id. ¶5), when the complaint was filed on January 27, 2016, applications filed by Charter, Time Warner Cable, Inc. ("Time Warner"), and Advance/Newhouse Partnership ("Advance/Newhouse") (collectively, "the entities") were then pending before the FCC seeking FCC consent to transfers of control of licenses and other authorizations related to a merger of the entities into a new entity, New Charter. Indeed, the complaint contends that the "FCC works hand-in-hand with these merging television distribution companies to enable and facilitate their Civil Rights violations." Id. ¶7. In an order issued May 10, 2016,

the FCC granted those applications.[1]  As explained below, this Court lacks jurisdiction to consider plaintiffs' sole cause of action against the FCC because Congress has provided a statutory scheme for judicial review of FCC actions vesting exclusive jurisdiction in the United States Circuit Courts of Appeals, and in some cases specifically the United States Court of Appeals for the District of Columbia Circuit.  Because this Court lacks jurisdiction, it should dismiss the complaint's second cause of action, which is directed only to the FCC.  As this is the only cause of action in the complaint directed at the FCC, the FCC should be dismissed as a defendant in this action as well.

## II. FACTUAL AND REGULATORY BACKGROUND

The Communications Act, 47 U.S.C. §§ 151, et seq., confers upon the FCC the power to regulate "interstate and foreign commerce in communication by wire and radio …." 47 U.S.C. § 151.  As part of this mission, the Commission authorizes interstate telecommunications service, 47 U.S.C. § 214, and licenses and regulates radio transmitting stations.  See 47 U.S.C. §§ 301, et seq.

On May 23, 2015, Charter, Time Warner, and Advance/Newhouse (the parent of Bright House Networks, LLC) entered into an agreement whereby they would merge into a new entity, referred to as New Charter, in a stock-and-cash transaction.  See Charter Order ¶18.

Prior to the merger, Charter provided broadband Internet, video, voice, and business services to over six million residential and business customers in 28 states. It was the sixth-largest multichannel video programming distributor (MVPD) in the United States. Time Warner provided broadband Internet, video, and voice services to over 15 million residential and business customers across 30

---

[1] *In the Matter of Applications of Charter Communications, Inc., Time Warner Cable, Inc., and Advance/Newhouse Partnership for Consent to Transfer Control of Licenses and Authorizations*, FCC 16-59 (May 10, 2016) ("Charter Order"). Declaration of C. Grey Pash, Jr. ("Pash Decl.") ¶ 2, Ex. A.

1 states. Time Warner Cable also owned seventeen regional sports networks and
2 owned and managed local news and lifestyle networks. It was the fourth largest
3 MVPD in the United States. Bright House Networks provided video, high-speed
4 data, home security, and voice services to approximately 2.5 million residential
5 and business customers in six states. It was the ninth-largest MVPD in the United
6 States. Bright House also owned and operated local news and high school sports
7 networks in Florida and had an attributable interest in national programming
8 services provided by Discovery Communications Inc. See generally Charter Order
9 ¶¶13-17.
10       On June 25, 2015. Charter, Time Warner Cable, and Advance/Newhouse
11 filed applications with the FCC seeking, pursuant to the requirements of 47 U.S.C.
12 §§ 214(a) and 310(d), the Commission's consent to the transfer of control of
13 various licenses and other authorizations, attendant to the companies' merger
14 agreement, to the merged company, New Charter. Pash Decl. ¶ 3, Ex. B.
15       On July 27, 2015, the Commission released a public notice accepting the
16 applications for filing. Id. (*Commission Accepts for Filing Applications of Charter*
17 *Communications, Inc., Time Warner Cable, Inc., and Advance/Newhouse*
18 *Partnership for Consent to Transfer Control of Licenses and Authorizations*,
19 Public Notice, 29 FCC Rcd 8107 (MB 2015)). On September 11, 2015, the
20 Commission released a public notice establishing a pleading cycle seeking public
21 comment on the applications. Id. ¶ 3, Ex. C (*Commission Seeks Comment on*
22 *Applications of Charter Communications, Inc., Time Warner Cable, Inc., and*
23 *Advance/Newhouse Partnership for Consent to Transfer Control of Licenses and*
24 *Authorizations*, Public Notice, 30 FCC Rcd 9916 (MB 2015).
25       The Commission received eleven petitions to deny the applications and
26 thousands of public comments and other filings in this proceeding, as well as
27 additional information from the applicants and other entities. See Charter Order
28 ¶24.

In a Memorandum Opinion and Order released on May 10, 2016, the FCC approved the applications, finding that their grant, subject to conditions, would serve the public interest. See Charter Order ¶2. As to the issue of the effect of the transaction on diversity of programming, the Commission concluded that the merger of these companies would not "present program carriage concerns that would disproportionately affect diverse, minority-owned, minority-focused, or independent video programmers." Id. ¶275. The Commission also found that its "program carriage rules are sufficient to address any allegations of discriminatory conduct that may arise. Therefore we find it unnecessary to adopt conditions related to independent or diversity-related program carriage, and decline to do so." Id. In addition, the Commission pointed out that "many of the issues raised by commenters [relating to diverse programming] are not transaction-specific, but rather deal with industry-wide issues, and, thus, are more appropriately addressed in our recently-commenced proceeding to consider the availability of diverse independent programming." Id. ¶274.[2]

Prior to approval of the entities' application to the FCC, the Commission specifically considered an *ex parte* filing by plaintiff NAAAOM on April 4, 2016, urging denial of the applications or imposition of conditions ensuring that a "substantial portion" of the merged company's programming budget be spent on "100 % African American-owned media." Pash Decl. ¶ 5, Ex. D (*Ex Parte* Notice: "FCC Filing: Entertainment Studios/NAAAOM Meetings"); see also Charter Order n. 942. The Commission dismissed NAAAOM's request as untimely, noting that pursuant to its public notice seeking comments on the application,

---

[2] See *Promoting the Availability of Diverse and Independent Sources of Video Programming, Notice of Inquiry*, 31 FCC Rcd 1610 (2016), 81 FED. REG. 10241 (Feb. 29, 2016). The public comment period has closed in that proceeding. Neither plaintiff here filed comments with the Commission or otherwise participated in that proceeding.

4

comments were due on October 15, 2015. Id. The Commission explained that "NAAAOM had ample time to submit its comments during the established pleading cycle, but it failed to do so and offers no justification now for its late submission." Id. The Commission also noted that it had emphasized in its Public Notice that in order "to allow the Commission to consider fully all substantive issues regarding the Application in as timely and efficient a manner as possible, petitioners and commenters must raise all issues in their initial filings. New allegations may not be raised in responses or replied, and absent a showing of good cause, any issues not timely raised may be disregarded by the Commission. Public Notice, 30 FCC Rcd at 9918 (citing 47 CFR § 1.45(c))." Id.[3]

The companies announced on May 18, 2016 that they had closed the merger transaction. See https://newsroom.charter.com/press-releases/2016/charter-communications-time-warner-cable-and-bright-house-networks-complete-transactions/.

### III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject-matter jurisdiction over the asserted claims. Fed. R. Civ. P. 12(b)(1). It is the plaintiff's burden to prove jurisdiction at the time the action is commenced. Tosco Corp. v. Communities for Better Environment, 236 F.3d 495, 499 (9th Cir.2001). "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." In re Dynamic Random

---

[3] A subsequent, and even later, letter was submitted to the FCC in this proceeding on behalf of plaintiffs that was not addressed in the Charter Order because of the letter's extremely belated filing. The letter relied primarily on a separate filing that plaintiff Entertainment Studios had made with the FCC in 2010 in another proceeding. See Pash Decl. ¶ 6, Ex E (Letter of April 27, 2016 to Marlene Dortch, FCC Secretary, from David R. Goodfriend).

1  Access Memory (DRAM) Antitrust Litig., 546 F.3d 981, 984-85 (9th Cir. 2008).
2  However, a court considering a Rule 12(b)(1) motion to dismiss is not limited to
3  the pleadings, McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988), but
4  may rely on extrinsic evidence to resolve factual disputes relating to jurisdiction.
5  St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989); see also Whitehorn v.
6  FCC, 235 F.Supp.2d 1092, 1095-96 (D. Nev. 2002), aff'd, 63 Fed. Appx. 346 (9th
7  Cir. 2003), cert. denied, 541 U.S. 1031 (2004).

## IV. ARGUMENT

The Court lacks jurisdiction to consider the second cause of action in plaintiffs' complaint, which presents a Fifth Amendment due process challenge directed solely against the FCC. The complaint in that respect is a serious departure from settled principles of administrative law. It conflicts with and would undermine the statutory review procedure that Congress has mandated for review of FCC action, which vests exclusive jurisdiction to review FCC orders in the courts of appeals. Plaintiffs' approach would improperly permit parties to subject administrative orders to collateral attacks that are duplicative, that waste judicial resources, and that threaten to produce conflicting results.

### A. The Courts of Appeals have exclusive jurisdiction to review FCC orders.

Under the special statutory review provisions set forth in the Communications Act, exclusive jurisdiction to review final orders of the FCC lies in the Courts of Appeals (other than the United States Court of Appeals for the Federal Circuit). 47 U.S.C. § 402(a); 28 U.S.C. § 2342(1). In certain cases, exclusive jurisdiction to review FCC orders lies solely with the United States Court of Appeals for the District of Columbia. 47 U.S.C. § 402(b). With regard to the Charter Order, certain licenses, particularly the Cable Television Relay Service Licenses, Private Wireless Licenses, and Satellite Communications Licenses, fall within the ambit of Section 402(b). See Pash Decl., Ex. A (Appendix A pp. 207-

212); 47 U.S.C. § 402 (b). The two methods for judicial review under Sections 402(a) and 402(b) are "mutually exclusive." <u>North American Catholic Educ. Prog. Found. V. FCC</u>, 437 F.3d 1206, 1208 (D.C. Cir. 2006).

  While the district courts retain residual jurisdiction to review final agency action under 28 U.S.C. § 1331 and the Administrative Procedure Act, they may exercise such jurisdiction only "in the absence or inadequacy" of special statutory review. 5 U.S.C. § 703; <u>see</u> 5 U.S.C. § 704 (permitting district court review of agency action where "there is no other adequate remedy in a court"). Here, plaintiffs have adequate review. Indeed, with respect to the issues raised in their complaint, the Supreme Court has held that "[e]xclusive jurisdiction to review FCC orders … lies in the Court of Appeals." <u>FCC v. ITT World Communications, Inc.</u>, 466 U.S. 463, 468 (1984), citing <u>Whitney Nat'l Bank v. Bank of New Orleans</u>, 379 U.S. 411, 420 (1965) ("[W]here Congress has provided statutory review procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive."). <u>See</u> also <u>Port of Boston Marine Term. Assn v. Rederiaktiebolaget Transatlantic</u>, 400 U.S. 62, 68-70 (1970); <u>Wilson v. A.H. Belo Corp.</u>, 87 F.3d 393, 395 (9th Cir.1996); <u>City of Peoria v. General Elec. Cablevision Corp.</u>, 690 F.2d 116, 119, 121-22 (7th Cir. 1982); <u>City of Rochester v. Bond</u>, 603 F.2d 927, 934 (D.C. Cir. 1979).[4]

  Courts have repeatedly rejected litigants' attempts to evade these procedures by bringing district court actions that raise collateral attacks on administrative

---

[4] That there was no FCC order with respect to the pending Charter merger when the complaint was filed in this case is irrelevant. As the Ninth Circuit has held, where a statute commits review of agency action to the court of appeals, any suit seeking relief that might affect the court of appeals' future jurisdiction is subject to the exclusive jurisdiction of the court of appeals. <u>See</u> <u>Public Util. Comm'r of Oregon v. Bonneville Power Admin.</u>, 767 F.2d 622, 626 (9th Cir. 1985), citing, <u>Telecommunications Research & Action Center v. FCC</u>, 750 F.2d 70, 76-77 (D.C. Cir. 1984).

...

orders. Plaintiffs cannot bypass the jurisdictional statute by asserting that their complaint seeks a form of relief not available in the FCC proceeding. The Supreme Court has specifically rejected such attempts and held that "[l]itigants may not evade the [exclusive jurisdiction] provisions by requesting the District Court to enjoin action that is the outcome of the agency's order." ITT World Commc'ns, 466 U.S. at 468. In ITT World Commc'ns, the Court found that, "[i]n substance, the complaint filed in the District Court raised the same issues and sought to enforce the same restrictions upon agency conduct as did the petition for rulemaking that was denied by the FCC." Id. The Court therefore held that plaintiffs must obtain judicial review through the court of appeals and not the district court. Id.

The same is true here. Plaintiffs in this case seek essentially the same relief against the FCC with respect to the Charter merger as would be available pursuant to the Communications Act's and the Hobbs Act's exclusive review procedures applicable to the recently released Charter Order. See, e.g., Compl. ¶19 (anticipating that the FCC would approve the Charter merger "based on the same sham diversity commitments" as it had done in other allegedly similar cases). Thus, as in ITT World Commcn's, plaintiffs' claims must be presented to the Courts of Appeals. 47 U.S.C. § 402

This is supported by the Ninth Circuit's decision in Wilson v. A.H. Belo Corp., 87 F.3d 393 (9th Cir.1996). In Wilson, plaintiffs, political candidates, brought state law claims including breach of contract and breach of the covenant of good faith and fair dealing against television stations. Citing ITT World Commc'ns, 466 U.S. at 468, the court held in Wilson that when the complaint filed in the district court "raise[s] the same issues and seek[s] the same relief in substance as the declaratory ruling" of the FCC, the jurisdictional statutes require review in the courts of appeals. Id. at 399. The court dismissed all of the causes of action because they "would have required the district court to determine the

substantive validity of a final FCC order reviewable under 47 U.S.C. § 402(a),ID" which was in the exclusive jurisdiction of the court of appeals. Id. at 400.

Similarly, in CE Design, Ltd. v. Prism Business Media, Inc., 606 F.3d 443 (7th Cir. 2010), the Seventh Circuit reviewed the substance of the complaint and determined that the plaintiff's lawsuit was a veiled challenge to the validity of an FCC rule. The Seventh Circuit upheld the district court's ruling that it lacked jurisdiction to consider the validity of the FCC rule. 606 F.3d at 448. The court found that when the defendant raised the FCC rule as a defense to the plaintiff's claim, "it inherently called upon the district court to enforce the FCC's rule. … Because [the plaintiff] argued that the district court should ignore – or in other words, invalidate – the FCC's [rule] for purposes of this suit, the Hobbs Act's jurisdictional bar came into play." Id.; see also United States v. Any and all Radio Station Transmission Equip., 207 F.3d 458, 463 (8th Cir.2000) ("Whichever way it is done, to ask the district court to decide whether the regulations are valid violates" the Hobbs Act). In sum, district court jurisdiction is precluded where "the questions raised by a [plaintiff] in the District Court … are cognizable by the [agency]" and are thus capable of being presented to the court of appeals on statutory review. Whitney National Bank, 379 U.S. at 41.

It is also well settled that plaintiffs cannot evade jurisdictional requirements by invoking the Constitution or bringing an action under laws other than the Communications Act, as plaintiffs NAAAOM and ESI have attempted to do by presenting a constitutional challenge. "A plaintiff may not escape an exclusive avenue of judicial review through artful pleading." American Bird Conservancy v. FCC, 545 F.3d 1190, 1194 (9th Cir. 2008); see also Folden v. United States, 379 F.3d 1344, 1359 n.13 (Fed. Cir. 2004) (holding that in deciding whether the jurisdictional provision applies to a breach of contract claim, the court "must look to the true nature of the plaintiffs' claims, not how plaintiffs characterize it."). In American Bird, the Ninth Circuit rejected the plaintiff's characterization of its suit

9

as a challenge to the agency's compliance with federal environmental laws rather than to the agency's ultimate order. 545 F.3d at 1193.  Similarly, in Any and all Radio Station Transmission Equipment, the Eighth Circuit held that the fact that the district court challenges were based in part on constitutional grounds did not permit the plaintiff to evade FCC and appellate jurisdiction. 207 F.3d at 463. Likewise, in Wilson, the Ninth Circuit dismissed several state law causes of action because they required the court to determine the substantive validity of a final FCC order. 87 F.3d at 400.

The statutory review procedure placing exclusive jurisdiction in the Courts of Appeals serves important policy objectives.  It ensures that challenges to administrative action are presented to the agency before they are presented to the courts.  It guarantees that agency action will be delayed or set aside only by an appellate panel, not by a single district court.  Vesting the Courts of Appeals with exclusive jurisdiction also ensures review of FCC decisions by a tribunal that has had the opportunity to develop far greater cumulative expertise about sometimes arcane regulatory matters – particularly evident here where Congress has provided for exclusive review of FCC radio licensing actions in one specific court of appeals, the D.C. Circuit.  This also streamlines the administrative process by removing a layer of judicial review, and reinforces the well-established principle that agency decisions should be reviewed on the administrative record, not on the basis of *de novo* judicial fact finding.  It, importantly, prevents interference with agency work through time-consuming discovery requests and trial court proceedings.   Lastly, it prevents "unnecessary duplication and conflicting litigation" about the same issue. Whitney National Bank, 379 U.S. at 422; see generally Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 48-50 (1938); Note, Jurisdiction to Review Federal Administrative Action: District Court or Court of Appeals, 88 Harv. L. Rev. 980, 983 (1975).  For these reasons alone, this Court should dismiss with prejudice the cause of action against the FCC.

**B.      Plaintiffs' claims of futility cannot vest jurisdiction in this Court.**

Plaintiffs contend that it would "be futile for Plaintiffs to approach the FCC and seek relief therein" (Compl. ¶¶24), implying that this Court, therefore, has jurisdiction over their claims. This is so, they argue, because the FCC has an "established practice of encouraging merger applicants to enter into sham diversity agreements in order to secure merger approval … encouraging the racist and discriminatory practices of Charter to continue unabated." Id. at ¶¶ 24-25. However, even if plaintiffs could demonstrate that it would be futile for them to raise their arguments to the Commission, which they cannot,[5] that is irrelevant to the question of whether this Court possesses jurisdiction to hear plaintiffs' complaint against the FCC.

Plaintiffs appear to confuse the concept of futility with respect to exhaustion of administrative remedies and the issue of jurisdiction. However, exhaustion is not jurisdictional. Terrell v. Brewer, 935 F.2d 1015, 1019 (9th Cir. 1991). Demonstrated futility can in some circumstances excuse exhaustion of administrative remedies where a court possesses jurisdiction to consider a party's complaint to begin with. Z.F. v. Ripon Unified Sch. Dist., 365 Fed. Appx. 77, 80 (9th Cir. 2010). But the question of whether it would be futile for these plaintiffs to exhaust their remedies before the FCC has no bearing here because this Court

---

[5] Only a year ago, a proposed merger between Comcast Corporation, the country's largest cable television provider, and Time Warner Cable, the fourth largest, was abandoned after parties were informed by FCC staff that it had serious concerns about whether the merger would be found to be in the public interest. See *Statement from FCC Chairman Tom Wheeler on the Comcast-Time Warner Cable Merger* (April 24, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333175A1.pdf. Plaintiffs participated in that proceeding, opposing that merger and presenting essentially the same arguments against Comcast's actions with respect to African-American owed programmers that they have raised in their complaint in this case against Charter. Pash Decl. ¶ 7, Ex. F. At the very least, that proceeding demonstrates that it is not inevitably futile to oppose a merger before the FCC.

lacks jurisdiction to consider their complaint regardless of whether they have exhausted their administrative remedies or whether plaintiffs can prove that doing so would be futile. As set forth above, Congress has vested exclusive jurisdiction to review FCC orders to the courts of appeals, and "a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by the statute." TRAC, 750 F.2d at 77. Plaintiffs may prefer to raise their arguments in this forum, but their exclusive remedy to challenge the FCC's approval of the Charter merger, which is plainly what they seek by this complaint, is to obtain review of the FCC's May 10th Order granting applications attendant to the Charter merger in the proper Court of Appeals. 47 U.S.C. §§ 402(a), (b); 28 U.S.C. §§ 2342(1), 2343.

Plaintiffs' arguments or contentions regarding an earlier, unrelated transaction in which the FCC approved a merger of Comcast Corporation and NBC Universal is similarly irrelevant to this Court's jurisdiction. See, e.g., Compl. ¶¶ 23, 52-62 (alleging that approved merger was based on "sham" arrangements related to carriage of minority programming that the applicants did not intend to implement and that have had no positive affect on the distribution of "100% African-American owned programming"); *In the Matter of Applications of Comcast Corporation, General Electric Company and NBC Universal, Inc. For Consent to Assign Licenses and Transfer Control of Licensees*, 26 FCC Rcd 4238 (2011). As an initial matter, a completely separate transaction authorized by the FCC five years ago has no bearing on this Court's jurisdiction over this complaint. Plaintiffs did not seek judicial review of that earlier Commission action, and the time to do so has long since expired. Moreover, plaintiffs did not present the FCC with any complaints about the implementation of the 2011 Comcast-NBC Universal merger until less than three months ago.[6] That petition is currently

---

[6] See http://apps.fcc.gov/ecfs/comment/view?id=60001528543.

pending before the FCC. To the extent that plaintiffs cite the Comcast-NBC Universal transaction as evidence to support their assertion that it would be futile for them to complain to the FCC about the Charter transaction, it clearly provides no such support.

In sum, plaintiffs cite nothing in the complaint, beyond their own recently-filed petition, to demonstrate that the parties to that transaction have failed to implement the referenced terms and conditions of that agreement or, more importantly, that the FCC has failed to enforce those term and conditions. If, as plaintiffs fear, the FCC fails to act on plaintiffs' petition after a reasonable time, mandamus remedies would be available to them in the Courts of Appeals, not this Court. See TRAC, 750 F.2d at 76-77. When the FCC acts on the petition, if plaintiffs remain aggrieved, judicial review in the court of appeals pursuant to the exclusive review provisions of 47 U.S.C.§§ 402(a), (b) and 28 U.S.C. § 2342(1) will be available to them at that time. Accordingly, plaintiffs' conclusory allegations regarding futility fail to establish this Court's jurisdiction over their cause of action against the FCC.

      **C.**    **The Federal Communications Commission is not subject to 42 U.S.C. § 1981.**

Plaintiffs allege in the introduction to their complaint that the "FCC enables and facilitates Charter's racial discrimination in contracting, in violation of 42 U.S.C. § 1981." Compl. ¶10; see also id. ¶7 ("[T]he FCC works hand-in-hand with these merging television distribution companies to enable and facilitate their Civil Rights violations."). This could be read to contend that the FCC has violated Section 1981, although, later in the complaint, plaintiffs' First Cause of Action, alleging violation of Section 1981, is directed only to defendant Charter.

Nevertheless, it is well established that sovereign immunity bars claims under 42 U.S.C. § 1981 as against the United States, its agencies and employees. Indeed, the explicit language of the statute precludes such action and Section 1981

does not constitute a waiver of sovereign immunity. See, e.g., Affiliated Prof'l Home Health Care Agency v. Shalala, 164 F.3d 282, 285 (5th Cir.1999) ("This Court has long recognized that suits against the United States brought under the civil rights statutes [42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988] are barred by sovereign immunity."); Davis v. United States Dep't of Justice, 204 F.3d 723, 725-26 (7th Cir.2000) (finding that the language of § 1981(c) precludes application of the statute to alleged discrimination under color of federal law); see also Morse v. North Coast Opportunities, Inc., 118 F.3d 1338, 1343 (9th Cir.1997) (holding that similar language in 42 U.S.C. § 1983 "precludes liability in federal government actors"). Accordingly, to the extent plaintiffs are attempting to assert Section 1981 claims against the FCC, they have failed to establish this Court's jurisdiction over any such claims. Thus, any such claims should be dismissed.

## V.     CONCLUSION

For the foregoing reasons, defendant FCC respectfully requests that the Court grant this motion and dismiss the second cause of action in the complaint against the FCC. Plaintiffs' claims against the FCC should be dismissed with prejudice as amendment would be futile.

Dated: June 16, 2016

Respectfully submitted,

EILEEN M. DECKER
United States Attorney
DOROTHY A. SCHOUTEN
Assistant United States Attorney
Chief, Civil Division

/s/ *Justin A. Okun*
JUSTIN A. OKUN
Assistant United States Attorney

Attorneys for Defendant
Federal Communications Commission