UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-609-GW(FFMx) | Date | December 12, 2016 |
|---|---|---|---|
| Title | *National Association of African-American Owned Media, et al. v. Charter Communications, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Katie Thibodeaux | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:         Attorneys Present for Defendants:

Louis R. Miller                                         Mark C. Holscher
                                                                Patrick F. Philbin

**PROCEEDINGS:** DEFENDANT CHARTER COMMUNICATIONS, INC.'S MOTION FOR 28 U.S.C. § 1292(b) CERTIFICATION [63];

DEFENDANT CHARTER COMMUNICATIONS, INC.'S MOTION TO STAY PROCEEDINGS PENDING APPEAL [68];

DEFENDANT CHARTER COMMUNICATIONS, INC.'S MOTION FOR RECONSIDERATION OF THE COURT'S OCTOBER 24, 2016 ORDER, OR IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS UNDER RULE 12(c) [69]

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. Defendant's Motion for Reconsideration [69] is DENIED. Defendant's Motion to Stay [68] is GRANTED and Defendant's Motion for Certification [63] is GRANTED. Counsel for Defendant will file a proposed order forthwith.

The Court sets Status Conference for March 27, 2017 at 8:30 a.m. Parties will file a joint status report by noon on March 23, 2017.

|  | : | 11 |
|---|---|---|
| | Initials of Preparer | JG |

*Nat'l Ass'n of African Am.-Owned Media, et al. v. Charter Commcn's, Inc., et al.*, Case No. 2:16-cv-00609-GW-FFM; Tentative Rulings on: (1) Motion for Reconsideration of the Court's October 24, 2016 Order, or in the Alternative, for Judgment on the Pleadings Under Rule 12(c); (2) Motion for 28 U.S.C. § 1292(b) Certification; and (3) Motion to Stay Proceedings Pending Interlocutory Appeal

Defendant Charter Communications, Inc. ("Defendant") has filed three motions set for this date: 1) a motion for reconsideration or, in the alternative, for judgment on the pleadings; 2) a motion to certify an interlocutory appeal; and 3) a motion to stay any proceedings in this Court should the Court certify the appeal. The Court will discuss the motions in that order.

**Motion 1**

Motion 1 is designed to have the Court correct its description of part of Defendant's argument in connection with the briefing that led to the Court's October 24, 2016 Order so that the record can be clear on appeal (if the Court grants Defendant's accompanying motion to certify an interlocutory appeal). In the alternative, if the Court believes that Defendant did not actually make the argument in question, Defendant offers that argument now in conjunction with a Rule 12(c) motion for judgment on the pleadings. The Court will deny this motion for several reasons.

First, the motion is not a proper motion for reconsideration. Local Rule 7-18 imposes the following standard:

> A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

C.D. Cal. L.R. 7-18;[1] *see also Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir.

---

[1] After itself citing to the Local Rule 7-18 standard in its opening brief, *see* Docket No. 69, at 4:5-7, in its Reply Defendant strangely argues that "Plaintiffs are wrong to argue that [Defendant's] motion" – which, again, is styled at least in part as a motion for reconsideration – implicates Local Rule 7-18" because

1999) ("[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law."). Defendant appears to locate justification for this reconsideration motion in that part of the standard that allows such a motion based on "a manifest showing of a failure to consider material facts." But the Court quite plainly did not fail to consider "material facts" (and certainly does not conclude that it committed "clear error" in its conclusion on the motion) – according to Defendant, it either failed to consider or mischaracterized an *argument*.[2] But if Defendant were able to shoehorn an overlooked *argument* in through the "material facts" door, it would neuter the accompanying provision that "[n]o motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion."

Even though a court also always has the discretion to reconsider its interlocutory rulings, *see Smith v. Massachusetts*, 543 U.S. 462, 475 (2005) (Ginsburg, J., dissenting on other grounds) (internal quotations omitted), nothing Defendant has said to this point leads the Court to believe there is any reason to either clarify (or change the wording of) its October 24, 2016 Order, or to change the outcome thereof. The Court therefore concludes both that there is no adequate basis for a motion for reconsideration and that an alternative motion for judgment on the pleadings should be denied.

Second (and as a further basis to conclude that there is no reason for the Court to exercise its discretion to reconsider/revise its interlocutory order), the motion is pointless. Whatever the Court may have said in characterizing Defendant's argument does not alter whether the record does or does not reflect Defendant making the argument in a different fashion, or with different emphasis. In other words, any record on appeal will speak for itself. *See* Fed. R. App. P. 10(a) (noting that "the original papers…filed in the district court" are amongst "the record on appeal"). If there is indeed an interlocutory appeal of the Court's October 24, 2016 Order, Defendant will have ample opportunity to cite to the

---

Defendant "is not asking the Court to change its ultimate conclusion and dismiss the First Amended Complaint," Docket No. 79, at 2:16-19.

[2] Nor did this Court reach any conclusion about the *waiver* of any defense, in contrast with the only cases Defendant was apparently able to find that came anywhere close to justifying a basis for reconsideration here. *See* Docket No. 69, at 9:3-7.

record on this point.

Third, while Defendant argues its impression that the Court misperceived the First Amendment argument it made in connection with its motion to dismiss, the Court also believes that Defendant has misunderstood the language employed – or at least the intent behind that language – in the October 24, 2016 Order. The passage in question analyzes whether "application of Section 1981 in the context of this case" would be "content-based" (thereby arguably implicating a more-demanding level of scrutiny) and stated that the outcome of that analysis "would appear to depend on the activity focused upon" – a textual context that Defendant appears to have overlooked in its reading of the Court's Order. Docket No. 57, at pg. 15 of 19. The Court attempted – perhaps inartfully – to explain why it failed to see, in this situation, the direct, content-based, impact present in such cases as *Claybrooks v. American Broadcasting Companies*, 898 F.Supp.2d 986 (M.D. Tenn. 2012) and *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995), where the activity impacted by a Section 1981 suit (and its content-based implications, if any) is simply the contracting decision leading to a decision whether to carry a programmer's offerings: to the extent Defendant had been able to locate authority for application of strict scrutiny, it had relied on cases where the "speech activity" in question consisted of the "actual programming" carried or, in the case of *Hurley*, the parade.[3]

Indeed, contrary to how Defendant believes the Court perceived its argument, the Court later acknowledged that "Defendant's ultimate carriage/programming activity is entitled to some measure of First Amendment protection," and had earlier observed that "Plaintiffs agree that Defendant is entitled to some First Amendment protection *in deciding which channels to carry*." Docket No. 57, at pgs. 12, 16 of 19 (emphasis added). The issue in the passage in question is not whether a cable operator's editorial decisions are entitled to First Amendment protection, *but see* Footnote 4, *infra*, but what standards of analysis apply.

---

[3] Defendant asserts that "[i]f [Defendant] enters into a contract to carry a channel like ESN's Justice Central, on its cable systems, that decision will, by definition, determine part of the programming on [Defendant's] cable systems." Docket No. 79, at 5:4-6. Of course, the same was true in *Turner Broadcasting System, Inc. v. Federal Communications Commission*, 512 U.S. 622 (1994), and strict scrutiny was not applied in that case.

3

Whether or not the previous paragraph clarifies the Court's thinking is irrelevant (and, for that reason, superfluous). The Court has not changed its view on the merits of Defendant's argument; [4] the Ninth Circuit's review will be *de novo*; and that review will be based upon the complete record of proceedings, including the arguments Defendant made (as supported by the record).

For the foregoing reasons, the Court denies Motion 1.

## **Motion 2**

Defendant moves to have the Court certify its October 24, 2016 Order for appeal, pursuant to 28 U.S.C. § 1292(b). There are three statutory requirements for certifying an order for interlocutory appeal: (1) there must be a "controlling question of law"; (2) there must be "substantial ground[s] for difference of opinion" on this question; and (3) it must appear that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b)[5]; *see also In re Cement Antitrust Litig.*,

---

[4] Defendant emphasizes that the contracting decision itself is entitled to First Amendment protection. But of course *Claybrooks* and *Hurley* did not involve contracting/association decisions in a vacuum (and *Turner Broadcasting* did not involve regulation in a vacuum). They involved contracting and regulation that led to either programming being aired or to the occurrence of a parade. As the Court more-explicitly pointed out with respect to *Claybrooks*, in particular, in that case "the casting decisions were 'part and parcel of the creative process behind a television program.'" Docket No. 57, at pgs. 15-16 of 19 (quoting *Claybrooks*, 898 F.Supp.2d at 993). Defendant's emphasis on its position causes the Court to confront additional questions regarding just how far Defendant's position would go. What would the situation be if, after rejecting a contract with Plaintiff due (according to Plaintiff) to racial considerations, Defendant had simply closed up shop and never aired another network or program? Would the contracting decision – divorced from the airing of *any* actual programming – *still* constitute speech protected by the First Amendment? If the answer to that question is "yes," if the mere decision whether or not to enter into a contract – separated out from a later, more traditional, expressive activity – is entitled to First Amendment protection such that contracting decisions can *never* be challenged as being improperly race-based because to do so would be content-based and run afoul of strict scrutiny, how would 42 U.S.C. § 1981 *ever* be enforceable? How would this be consistent with the limited notion reflected in *Claybrooks* that *Hurley* means that "*under appropriate circumstances*, anti-discrimination statutes of general applicability must yield to the First Amendment"? 898 F.Supp.2d at 996. If Defendant is correct, wouldn't Section 1981 yield to the First Amendment "under *all* circumstances?"

[5] Section 1292(b) provides, in part, as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order…. That application for an appeal…shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b).

4

673 F.2d 1020, 1026 (9th Cir. 1982), *aff'd*, 459 U.S. 1190 (1983). In fact, certifications of motions for interlocutory appeal are not common, such that Section 1292(b) should be "used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *Id.*; *see also James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 n.6 (9th Cir. 2002) (noting that Section 1292(b) certification is appropriate only in "rare circumstances"); *United States v. Woodbury*, 263 F.2d 784, 788 n.11 (9th Cir. 1959) (indicating that it "is to be applied sparingly and only in exceptional cases").

Beyond the foregoing framework, there are two important points to make at the outset here. First, unlike the Ninth Circuit's certification of questions of state law to state supreme courts, when a district court certifies an order for appeal pursuant to Section 1292(b), it is the *entire order* that is on appeal, not *particular questions*. *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) ("As the text of § 1292(b) indicates, appellate jurisdiction applies to the order certified to the court of appeals, and is not tied to the particular question formulated by the district court…. [T]he appellate court may address any issue fairly included within the certified order because 'it is the *order* that is appealable, and not the controlling question identified by the district court.'") (quoting 9 J. Moore & B. Ward, Moore's Federal Practice ¶ 110.25[1], p. 300 (2d ed. 1995)); *C. Delta Water Agency v. United States*, 306 F.3d 938, 952 n.10 (9th Cir. 2002). Thus, the Court need not consider *both* of the two separate questions Defendant presents as a basis for certification – if there is one question supporting certification, then the entire order is certified for appeal.[6]

Second, once this Court certifies its order for appeal (assuming that it does), the Ninth Circuit still must accept the appeal, a decision which is within that court's absolute discretion. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) ("[E]ven if the

---

[6] The Court addresses only the First Amendment issue in its analysis. The principal reason why it refrains from doing so with respect to the causation issue – apart from it being unnecessary if the First Amendment issue is sufficient – is that there is controlling Ninth Circuit precedent on the causation issue. While Defendant argues that "[t]he mere fact that the Ninth Circuit has already addressed the causation standard under section 1981 in *Metoyer v. Chassman*…does not undermine the basis for finding a substantial ground for difference of opinion," it cites no case law in support of that proposition. Docket No. 63, at 13:13-14:2. Without investigating that suggestion in detail, the Court has its doubts about its correctness. Moreover, "whether *Metoyer* can survive under recent Supreme Court decisions," *id.* at 16:21-24, is not the "controlling question of law" presented by the Court's October 24, 2016 Order. That is not a question of law at all, so whether reasonable jurists could disagree about its answer is irrelevant to the Section 1292(b) analysis.

district judge certifies the order under § 1292(b), the appellant still 'has the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of final judgment.' The appellate court may deny the appeal for any reason, including docket congestion.") (omitting internal citation) (quoting *Fisons, Ltd. v. United States*, 458 F.2d 1241, 1248 (7th Cir. 1972)); *In re Cement*, 673 F.2d at 1026 ("If we conclude that the requirements [for certification] have been met, we may, but need not, exercise jurisdiction."); *see also* Fed. R. App. P. 5(a)(1); Goelz & Watts, Federal Ninth Circuit Civil Appellate Practice (2016) ("Goelz & Watts"), §§ 2:181-192, at 2-59. As a result, if the Ninth Circuit is concerned that this case is not of the type that should be certified – because it involves only a single claim against a single defendant, is not a class action, multi-district litigation, or an antitrust case – or has any other reason for why it should not be certified, the Ninth Circuit can make that decision. This Court does not believe that only certain types of cases can qualify for a Section 1292(b) certification. Certification is possible if the statutory requirements are met. It is to those requirements that this analysis now turns.

Controlling Question of Law

A "controlling question of law" is one that would "materially affect the outcome of [the] litigation." *In re Cement*, 673 F.2d at 1026. But reversal of the underlying order need not terminate the litigation in order to satisfy this requirement. *See* Goelz & Watts § 2:160.3, at 2-49.

This requirement is easily met with respect to Defendant's First Amendment defense. Defendant has argued – based upon its reading of *Turner Broadcasting*, *Hurley* and *Claybrooks* – that it has something close to a near-total First Amendment right in its contracting decisions, such that an individual or entity effectively cannot even bring a claim founded upon 42 U.S.C. § 1981 in connection with those decisions. The Court has serious doubts regarding whether Defendant is correct in this regard,[7] but that is beside the point. The argument is akin to an argument for complete immunity, one that is often an appropriate "controlling question of law" for Section 1292(b) purposes. *See, e.g.*, *Schlegel*

---

[7] In contrast, Plaintiffs first argued that intermediate scrutiny was warranted, but now – in their opposition to the certification motion – contend that only rational basis review may be appropriate (while exhibiting uncertainty themselves on that point, further suggesting the need for clarification). *See* Docket No. 71, at 12:22-13:5 ("Moreover, intermediate scrutiny is *most likely* not the right approach for this case.") (emphasis added).

6

*v. Bebout*, 841 F.2d 937, 941 (9th Cir. 1988); *Catalina Cablevision Assocs. v. City of Tucson*, 745 F.2d 1266, 1267 (9th Cir. 1984); *Vaughn v. Regents of Univ. of Cal.*, 504 F.Supp. 1349, 1355 (E.D. Cal. 1981); *SolarCity Corp. v. Salt River Project Agricultural Improvement*, No. CV-15-00374-PHX-DLR, 2015 WL 9268212, *2 (D. Ariz. Dec. 21, 2015). Although immediate termination is not required to satisfy the "controlling question of law" analysis, here that is what would result if Defendant is correct – the single claim advanced in this case would almost certainly be dismissed.

<u>Substantial Grounds for Difference of Opinion</u>

"A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). Reasonable jurists typically disagree – and "[c]ourts *traditionally* will find that a substantial ground for difference of opinion exists" – "where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (citation omitted) (emphasis added). The First Amendment issue Defendant has raised is a novel (and important) one, at the intersection of (and sharing certain similarities with) the Supreme Court's decisions in *Turner Broadcasting* and *Hurley*. Although this Court does not believe that Defendant can be correct in its argument, that argument is at least colorable. Because the question can only arise in limited circumstances[8] – cable television contracting decisions – its novelty is not surprising. "[W]hen novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Reese*, 643 F.3d at 688. At the same time, as the Court noted in its October 24, 2016 Order, one other court *tentatively* ruled in favor of Defendant's argument and, in a somewhat-different setting, a federal district court in Tennessee rejected a Section 1981 claim along the lines of Defendant's argument. For all of these reasons, the Court believes that there are substantial grounds for difference of opinion with respect to just how *Turner*

---

[8] While the question arises in this specific circumstance, its resolution has potentially far-reaching effects, depending upon how widely First Amendment rights in contracting are construed. *See* Footnote 4, *supra*.

7

*Broadcasting* and *Hurley* can be synthesized in this area and how the First Amendment analysis – even if it does not lead to an automatic dismissal of the Section 1981 claim – is to be structured in light of those decisions.

### Materially Advance Ultimate Termination of Litigation

As noted above, if Defendant is correct in its First Amendment argument, this case would seemingly end. Even if it is incorrect,[9] any instruction from the Ninth Circuit on just how it sees *Turner Broadcasting* and *Hurley* interacting in this area would clarify the applicable standards and – this Court believes – fruitfully aid in the resolution of this case, either in-court or otherwise.[10] *See Steering Comm. v. United States*, 6 F.3d 572, 575 (9th Cir. 1993) ("Whether the district court failed to articulate the appropriate standard of conduct for pilots under the federal aviation regulations is a question of law appropriate for interlocutory appeal."). While an appeal would, for the time-being, delay the case (assuming that this Court or the Ninth Circuit were to implement a stay), it would certainly streamline and focus discovery efforts for the parties to understand the proper analytical standards governing the sole claim in the case. In contrast, were this case to proceed through a trial applying incorrect legal standards because of uncertainty as to that question, the delay in reaching ultimate resolution would be significantly longer. *See Dalie v. Pulte Home Corp.*, 636 F.Supp.2d 1025, 1030 (E.D. Cal. 2009) ("[G]ranting the application for interlocutory appeal will permit resolution of the issue of the enforceability of the class action waivers at an early enough stage in the litigation to avoid the possibility of two significantly duplicative trials if the court's ruling is reversed.").

### Conclusion as to Section 1292(b) Certification

The First Amendment question confronted in the Court's October 24, 2016 Order meets all of the requirements for certification of an interlocutory appeal from that order. Defendant should prepare a proposed order accomplishing that purpose.

---

[9] Denials of motions to dismiss are not disfavored orders for Section 1292(b) purposes, even where the Ninth Circuit's ultimate conclusion is simply to affirm the district court. *See, e.g.*, *Fortyune v. City of Lomita*, 766 F.3d 1098, 1100-01, 1106 (9th Cir. 2014); *see also Joffe v. Google*, 746 F.3d 920 (9th Cir. 2013).

[10] Although – because it finds the First Amendment aspect of the October 24, 2016 Order sufficient for certification purposes – the Court does not consider the causation issue in connection with this motion, an interlocutory appeal that would give the Ninth Circuit an opportunity to address the continued vitality (or not) of its earlier decision in *Metoyer v. Chassman*, 504 F.3d 919 (9th Cir. 2007) in the wake of more-recent Supreme Court decisions would likewise almost certainly materially advance the ultimate termination of this lawsuit.

**Motion 3**

As set forth *supra*, Footnote 5, granting an interlocutory appeal does not automatically stay the litigation in the trial court. However, if the Court grants Motion 2, certifying for interlocutory appeal its October 24, 2016 Order, it would be illogical in this case for it to *deny* Defendant's motion for a stay pending that appeal. This case involves a single claim against a single defendant; the *entire case* will be on appeal and, conceivably, could be dismissed. Trial is currently set for July 2017, with discovery set to end in April 2017. If no stay is entered, the case will likely proceed through discovery and to a decision on the merits – either at trial or some point short of trial – before the appeal is even complete. At that point in time, the interlocutory appeal will have been pointless. This is a sufficient basis for a stay of this litigation.[11] *See, e.g.*, *Cal. Dep't of Toxic Substances Control v. Hearthside Residential Corp.*, No. SA CV 06-987-VBF (MLGx), 2008 WL 8050005, *9 (C.D. Cal. Dec. 8, 2008); *Asis Internet Servs. v. Active Response Grp.*, No. C07 6211 TEH, 2008 WL 4279695, *3-4 (N.D. Cal. Sept. 16, 2008). The Court sees no interest on Plaintiffs' part that will be damaged sufficiently so as to outweigh the basis for a stay.[12] Consequently, it grants this motion.

---

[11] The Court does not find instructive, as to the applicable standard for a stay in these circumstances, the Supreme Court's decision in *Nken v. Holder*, 556 U.S. 418 (2009) or case law involving requests to stay court-issued injunctive relief during an appeal.

[12] If Plaintiffs are concerned about the loss of evidence, they may meet-and-confer with Defendant – as Defendant has offered, *see* Docket No. 80, at 18:16-18 – to ensure there is no loss or destruction of relevant evidence during the course of the appeal. The parties may also wish to consider how best to reach a similar result with respect to potential witnesses who may have left, or who might yet leave, Defendant's employ.